FILED
11/20/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 9, 2024 Session

**JASLENE WASHINGTON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Marion County**
**No. 11910     Bradley Sherman, Judge**

_____

**No. M2024-00074-CCA-R3-PC**
_____

In 2022, the Petitioner, Jaslene Washington, pleaded guilty in the Marion County General Sessions Court to assault and resisting arrest and received an effective sentence of eleven months and twenty-nine days of unsupervised probation conditioned upon the payment of fines and costs.  The Petitioner filed a petition for post-conviction relief, alleging multiple claims including ineffective assistance of counsel.  Following a hearing, the post-conviction court denied relief.  On appeal, the Petitioner maintains that counsel was ineffective in providing erroneous information regarding the expungement of her convictions and that the Petitioner relied upon this erroneous information in deciding to enter the guilty pleas.  After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Samuel D. Nelson, III, Jasper, Tennessee (on appeal), and Sarah Hay, Dunlap, Tennessee (at hearing), for the appellant, Jaslene Washington.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Courtney Lynch, District Attorney General; and Glen C. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Facts and Procedural History**

According to the record on appeal, on September 10, 2022, someone called the police and reported a reckless driver, who was later identified as the Petitioner, on the interstate. The caller followed the Petitioner off the interstate and to a Mapco gas station, where the Petitioner and the caller remained until a police officer arrived. Jasper Police Officer Brian Davis responded to the scene and observed an open container of alcohol inside the Petitioner's vehicle. The Petitioner's child also was inside the vehicle. As Officer Davis was administering field sobriety tests to the Petitioner, she became "disorderly" and "physically refused" Officer Davis's attempt to detain her.

Two deputies from the Marion County Sheriff's Department arrived at the scene to assist Officer Davis. The Petitioner refused to get into the patrol car, and once the officers were able to get her into the car, she prevented them from closing the door. The Petitioner requested to see her child, which the officers allowed, but she became violent and said "racial things" to the officers. The officers removed the Petitioner from the patrol car when she refused to allow them to remove her child from the car. While struggling with the officers, the Petitioner kicked one officer in his groin, "flipped" the handcuffs, and struck another officer on the right side of his head with the handcuffs.

The Petitioner was arrested and charged with resisting arrest, assault of a law enforcement officer, aggravated assault of a law enforcement officer, escape, child endangerment, civil rights intimidation, driving under the influence ("DUI"), and violation of the implied consent provisions. The Petitioner was appointed counsel ("Counsel"), appeared in the Marion County General Sessions Court on September 28, 2022, and her case was continued to November 30, 2022. On November 30, the Petitioner pleaded guilty to misdemeanor assault and resisting arrest and received concurrent sentences of eleven months and twenty-nine days and six months of unsupervised probation conditioned upon her payment of fines and costs. The remaining charges were dismissed. Approximately one month later, the Petitioner paid all outstanding fines and costs.

On June 21, 2023, the Petitioner filed a pro se petition for post-conviction relief, alleging that her guilty plea was unknowingly and involuntarily entered, that her arrest was unlawful, and that the State failed to disclose exculpatory evidence. The petition was transferred from the Marion County General Sessions Court to the Marion County Circuit Court. *See* T.C.A. § 40-30-104(a) ("Petitions challenging misdemeanor convictions not in a court of record shall be filed in a court of record having criminal jurisdiction in the county in which the conviction was obtained[.]"). The post-conviction court appointed Counsel to represent the Petitioner, and the Petitioner filed an amended post-conviction petition, incorporating the claims from the pro se petition and raising a claim of ineffective assistance of counsel. An evidentiary hearing was held on December 15, 2023.

At the evidentiary hearing, the twenty-nine-year-old Petitioner testified that she was a graduate of Loyola University where she majored in economics and minored in business management. In August 2022, she obtained her master's degree in information systems, and she moved to Georgia in September 2022, prior to her arrest.

The Petitioner maintained that she was unaware of the extent of her charges when she first appeared in the general sessions court on September 28, 2022. She testified that she believed she was facing a DUI charge and that she assumed she was also facing a child endangerment charge since her child was taken away when she was arrested. She said she was "[s]hocked" and "[d]istraught" when Counsel informed her of the other charges. The Petitioner stated that Counsel met with her for approximately five minutes, that Counsel did not discuss the elements of the charges with her, and that Counsel presented her with the same plea offer that the Petitioner later accepted but that she declined the offer at that time.

The Petitioner testified that, during the November 30, 2022 court session, she watched portions of the video recording of her arrest with Counsel and the prosecutor. The Petitioner said that she became emotionally distraught while watching her son in the recording and that she began crying and was not thinking clearly. She stated that "at that point[,] I just wanted [it] to all . . . be over. I just wanted to go home." The prosecutor then extended the same offer that had been presented at the prior court date. The Petitioner stated that Counsel did not review the elements of the offenses with which she was charged or the sentencing ranges and that, during the course of Counsel's representation, they "probably shared 15 minutes of conversation."

The Petitioner testified that Counsel sought judicial diversion but that the Petitioner was not eligible due to a charge in Illinois that was pending at the time of her guilty plea in this case but had since been dismissed. The Petitioner stated that Counsel informed her that her charges were eligible for expungement after two years and that she relied upon this information in deciding to accept the plea agreement. She said she later learned that an assault conviction could not be expunged after two years.

The Petitioner testified that although the general sessions court "mentioned" the constitutional rights that she would be waiving by entering the plea, the court did not explain those rights. She stated that she was "very hysterical" during the plea hearing but that no one addressed her mental state or commented that she appeared to be in distress.

The Petitioner stated that Counsel failed to explain the effect of the plea on her employment opportunities. The Petitioner was unemployed at the time of the post-conviction hearing and said that in June 2023, she received a job offer, which was later

rescinded due to her assault conviction. She did not believe she would be able to obtain employment in a field related to her degrees with an assault conviction on her record.

On cross-examination, the Petitioner acknowledged that when she was released on bond on September 20, 2022, she signed a document that listed her charges but stated that she did not read the document before signing it. She also stated that she did not read the plea agreement before signing it and that Counsel "just kind of told me what the document was." The Petitioner acknowledged that she knew the charges pending against her when she entered the guilty plea, and that the general sessions judge reviewed her constitutional rights with her and ensured that she understood them before accepting the plea.

The Petitioner testified that she and Counsel did not discuss expungement until after the Petitioner entered the guilty plea. The Petitioner said that at the time she entered the plea, she had accepted a position with a company in Georgia that was set to begin in November 2022. She remained employed with the company until June 2023. In June 2023, she received a job offer from another company, which subsequently rescinded the offer.

Counsel testified that she was licensed in 2017, that she was a solo practitioner for approximately two years during which she practiced in the area of criminal defense, and that she began her employment with the public defender's office on September 14, 2022. Counsel referred to the Petitioner's claim that they met for four to five minutes during the September court date as "a gross understatement," and Counsel estimated that she met with the Petitioner for approximately thirty minutes on that date. Counsel stated that the Petitioner wanted to leave to get her child and that as a result, Counsel "tried to get her out of there as quickly as possible." Counsel said that she explained the charges to the Petitioner, the strengths and weaknesses in her case, and her available options. Counsel stated that although the Petitioner was upset, she also was "[o]f a clear mind." Because the Petitioner was unwilling to enter negotiations with the State at that time, Counsel reset the case for a preliminary hearing.

Counsel testified that following the September court date, she began preparing for a preliminary hearing. She issued subpoenas for the recordings from the officers' body cameras and the surveillance video from Mapco. The surveillance video from Mapco was unavailable, but Counsel obtained a recording of the Petitioner's arrest from an officer's body camera and reviewed it in preparation for the preliminary hearing. Counsel stated that during a meeting with the prosecutor and the Petitioner on the November court date, she showed the portions of the recording of the Petitioner's arrest that were beneficial to the defense. Counsel said the Petitioner was not crying, shaking, or otherwise visually upset while watching the recording.

Counsel testified that the Petitioner's only options on the November court date were to proceed with a preliminary hearing or to enter a guilty plea and that the State was unwilling to agree to another continuance in general sessions court. Counsel stated that she was prepared to proceed with a preliminary hearing, that she explained the grand jury and trial process to the Petitioner, and that she probably told the Petitioner that her case would likely be bound over to the grand jury if they proceeded with a preliminary hearing.

Counsel testified that she attempted to negotiate a more favorable deal with the State but that she was only able to persuade the State to agree to unsupervised probation. She recalled that the Petitioner stated that she did not want to plead guilty to DUI because a DUI conviction would cause her to lose her job. The Petitioner was not eligible for judicial diversion due to a pending charge in another jurisdiction. Counsel believed she discussed expungement with the Petitioner during the November court date, and she denied informing the Petitioner that her convictions could be expunged after two years. Counsel testified that she believed she told the Petitioner that "she could, in fact, look into expunging her record for a simple assault after five years because that is what the statute says." Counsel stated that, generally, she will discuss possible effects of a conviction on employment if asked by a client but that she had "no way of knowing how a job is going to take one plea or another."

Counsel stated that she spent a total of approximately one hour with the Petitioner on the November court date. The Petitioner chose to enter a guilty plea rather than proceeding with a preliminary hearing and informed Counsel that "she was ready for it to be over with." Counsel said that while the Petitioner was "upset" with the situation, she was not "[v]isibly distraught." Counsel stated, "I think that she was entering a plea that she believed to be in her best interests."

On cross-examination, Counsel testified that she believed she discussed expungement with the Petitioner prior to the plea hearing. Counsel stated, "I would have talked to her about expunction as a statutory right after I [had] told [her] that diversion was off the table." Counsel recalled that the general sessions court reviewed the Petitioner's constitutional rights with her during the plea hearing. Counsel was standing beside the Petitioner during the plea hearing and stated that the Petitioner was not crying, and that the general sessions court did not comment on the Petitioner's demeanor during the plea hearing.

The State presented the testimony of Judge Marshall Ancle Raines, Jr., the general sessions judge for Marion County, regarding his standard procedure during a plea hearing. He stated that he ensured that a defendant understood the charges to which he was pleading guilty and his constitutional rights before accepting a guilty plea. He said that he generally stops the proceedings whenever a defendant appears extremely upset and does not appear

to be concentrating to allow the defendant the opportunity to confer with Counsel. On cross-examination, Judge Raines testified that although he had no independent recollection of the Petitioner's case, he would have stopped the proceedings and allowed the Petitioner to confer with Counsel had the Petitioner been "distraught and sobbing" during the plea hearing.

At the conclusion of the hearing, the post-conviction court made oral findings denying the Petitioner's post-conviction petition, which the court subsequently incorporated into a written order. The post-conviction court found that Counsel rendered effective assistance of counsel and made a general finding crediting Counsel's testimony. The post-conviction court stated that although the Petitioner asserted that Counsel told her that expungement was available after two years, Counsel "strongly" maintained that she "did not and would not have said that, but that she told her it would be expungeable after five years because that is the state of the law and that she would not have given her inaccurate information. And I believe as [Counsel] put it because five years is what the statute said."

The post-conviction court found that the Petitioner was "very intelligent" and "highly educated" and that her claim that she was aware only of the DUI charge when she first went to general sessions court "doesn't pass muster" in light of her signing the bond order, which listed all the charges that she was facing. The post-conviction court found that Counsel was prepared to proceed with a preliminary hearing and that the Petitioner received a "sweetheart deal" from the State. The post-conviction court also found that Counsel "had no way of knowing" that the Petitioner would seek to change employment seven months later and have an offer for employment rescinded due to the guilty plea. The post-conviction court rejected the Petitioner's claim that she was crying, distraught, and "hysterical" over the entry of the plea.

The post-conviction court found that the Petitioner failed to present evidence establishing a reasonable probability that but for any errors made by Counsel, the Petitioner would have declined to plead guilty and would have insisted on a trial. The post-conviction court stated that based on the testimony presented at the post-conviction hearing, the Petitioner decided to plead guilty because she wanted to "get the heck out of here and get back to Georgia[ ] and get on with [her] life." The Petitioner subsequently filed a timely notice of appeal.

## II. Analysis

The Petitioner asserts that Counsel was ineffective by failing to provide her with correct advice regarding when her convictions would be eligible for expungement. The Petitioner maintains that there is a reasonable probability that, but for Counsel's erroneous

advice, she would not have pleaded guilty and would have insisted on going to trial. The State responds that the Petitioner failed to establish deficiency or prejudice. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this court, with no presumption of correctness. *Id*. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that

"counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This standard also applies to claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59. This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

The post-conviction court declined to credit the Petitioner's testimony that counsel informed her that her convictions were eligible for expungement after two years. Rather, the post-conviction court credited Counsel's testimony in which she "strongly" maintained that she would not have provided this advice to the Petitioner and stated that she believed she told the Petitioner that the charges were eligible for expungement after five years "because that is what the statute says." *See* T.C.A. § 40-32-101(g)(2)(B)(i), (k)(1)(C)(i) (providing for the expungement of certain eligible misdemeanor and Class E felony convictions if five years have elapsed since the completion of the sentence). The Petitioner challenges the post-conviction court's decision to reject her testimony and to, instead, credit Counsel's testimony. However, we are bound by the post-conviction court's findings regarding the credibility of these witnesses and the weight to be afforded to their

testimony, and we may not re-weigh this evidence on appeal. *See Momon*, 18 S.W.3d at 156; *Henley*, 960 S.W.2d at 578-79. The evidence does not preponderate against the post-conviction court's findings. We, therefore, conclude that the Petitioner has failed to establish that Counsel was deficient.

We also conclude that the Petitioner has failed to establish prejudice. The record reflects that the Petitioner was aware of the numerous felony and misdemeanor charges that she was facing, and that Counsel prepared for a preliminary hearing and advised the Petitioner of the proceedings before the grand jury and the circuit court if her case was bound over to the grand jury. Counsel presented the Petitioner with an offer whereby she would plead guilty to two misdemeanor offenses and receive an effective sentence of eleven months and twenty-nine days of unsupervised probation upon the payment of court costs. Counsel testified that in accepting the plea agreement, the Petitioner told her that "she was ready for it to be over with." Although the Petitioner testified that she relied on Counsel's advice regarding the expungement of her convictions in deciding to enter the guilty plea, the Petitioner also testified that they did not discuss expungement until she pleaded guilty. Regardless, the post-conviction court did not credit the Petitioner's testimony that she relied on Counsel's advice regarding expungement in deciding to enter the guilty and, instead, found that the Petitioner decided to plead guilty rather than proceed with a preliminary hearing because she wanted to return to Georgia and "get on with [her] life." The evidence does not preponderate against the post-conviction court's findings. We conclude that the Petitioner has failed to show a reasonable probability that, but for Counsel's alleged errors in failing to correctly advise her regarding expungement of her convictions, she would not have entered her guilty plea and would have proceeded to trial. Therefore, the Petitioner is not entitled to relief on this issue.

## III. Conclusion

Based on our review of the record, the parties' briefs and oral arguments, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE